Opinion of the Court.
IVÍarshai.1. &c. asserting the superior equity to the land in contest, under an entry for 17372 acres, made the 2d of March 1784, in the name of Patty Harris and others, brought this suit in chancery to compel Powers heirs, &c. to surrender their elder title derived under adverse conflicting claims.
The validity of the entry made in the name of Patty Harris and others, is controverted by Powers’ heirs &c. and they set up and rely upon a settlement and preemption entries, made in the name of James Powers, assign-ee of Joseph Houston, together with an entry for seven hundred acres upon a treasury warrant, made in the name of said Powers on the 2d of February 1784.
The court below decided against the validity of the treasury warrant entry, made in the name of Powers, but sustained the settlement and preemption entries, set up by the appellants, and the entry of Patty Harris and others, under which the appellee claims, and decreed the appellants to surrender all the land in contest, which is not common to the surveys originally made under the settlement and preemption entries of Powders and to surveys constructed upon those entries, as they were directed by the decree of the court to be made.
The main question for the decision of this court involves the propriety of that part of the decree which decided the treasury warrant entry of Powers to be invalid.
The validity of the entry of Patty Plarrisand others-under which’ the appellees claim, is likewise assailed’by the appellants; hut upon a state of preparation not more favorable to that entry than exists in the present case, it was sustained by this court in the case of Foto- *439 hr vs Halbert &c. 3 Bibb 384, and the decision then giv- ....... ® en we stiil think correct.
The treasury warrant entry of Powers, is in the following words.
“2d February 1784, James Powers assignee, &c. enters 70© acres of land on part of a treasury warrant No. 18718, on the south side of Hinkston’s fork of Licking creek, to begin at the north east corner of Samuel Nes-bat’s survey, to run west along said line 470 poles to FPil-liam Nesbat’s survey, and to run at right angles north for quantity.”
This entry was subsequently on the 3d of March 1784 amended; but as that amendment is junior in date to the entry of Patty Harris and others, it is not rf&ces-sary further to notice it, unless the original to which it is an amendment can be sustained.
A settlement and pre-emption survey in the name of Samuel Nebat, and another in the name of Wm. Nesbat, are exhibited in the record; each of which purports to have been made more than a year before the date of Powers’ treasury warrant entry, and the survey of both settlement and pre-emption of Samuel Nesbat, present each a north east corner, and from the connected plat it. appears, that a line extended west from the north east corner of the pre-emption, would run with the pre-emption line to the north east corner of the settlement, and with the settlement line to the line ®f William Nesbat’s preemption survey. The line of William Nesbat’s preemption, which thus intersects with the settlement line of Samuel Nesbat’s settlement survey, is at right angles with the line extended west from the north' east corner ofSamuel Nesbat, so that if the entry of Powers be made to begin at either the north east corner of Samuel Nesbat’s settlement or preemption, and is extended west, it will strike the line of William Nee-bat, and a line at right angles, north from the west line, at the intersection of Samuel and William Nesbat’s surveys, would bind on the line of William Nesbai’s preemption survey. From the relative position which these surveys of the Nesbats bear to each other, it is evident, therefore, that the locator of Powers’ entry, intended it should begin at the north east corner of that of Samuel Nesbat, and to run west to the line ofthat of Wm. Nesbat, and to extend thence north with William Nesbat’s line go far as to contain the quantity, by ex *440 tending other lines at right angles. But there is á north east corner to each of Samuel Nesbat.’s surveys, nek ther of which, it was contended in argument, fits the calls of Powers’ entry better than the other; and hence it was urged, that a subseqdent locator could not have known at which of the north east corners of Samuel Nesbat’s surveys, the entry of Powers calls to begin. We think, however, that enough exists in the record to shew that the north east curner of the preemption, and not that of the settlement of Powers, was intended by the locator as the beginning of Powers’ entry. To begin at either the settlement or preemption corner, a line extended thence west will intersect the line of William Nesbat, within a distance less than four hundred and seventy poles, so that the call of the entry for that distance cannot be complied with by extending the line from either, corner; but the departure from the call for distance, would not be so great by fixing the beginning of Powers, at the north east corner of the preemption, as at the comer of the settlement, and we are inclined to adopt that construction of the entry, which will give the greatest effect to each of the calls. But admitting the north east corner of the preemption of Samuel Nesbat, to be the corner intended by the locator for the beginning of Powers’ entry, we are met with an objection not to be gotten over.
The objection to which we allude, is that oftbe lack of sufficient evidence to establish the notoriety of either survey of either of the Nesbats.
■he entries upon which those surveys were libited in the record, and although the t had been executed sufficiently long to 3fore the date of Powers’ entry, neither description which could enable a subse-to find them, and we have been unable y evidence going to establish the notorie-rvey.
Those surveys must have been known by the survey-iqr and those present with him when they were made, and the evidence is, perhaps, sufficient to prove that another surveyor and his chainmen, marker, &c. who encamped with the surveyor, by whom those surveys were made, not far from the land, about the time they were executed, also possessed such information as would have enabled them, to have informed others where they *441 blight be found. But the persons with both surveyors did not compose a company of more than about ten, and it would be indulging ^'unwarrantable presumption to infer from the fact of those persons knowing the surveys, that they were known to the generality of those living most contiguous thereto, and would be in direct conflict with other evidence which is contained in the record, and which proves negatively, that those surveys were not known at the most contiguous stations. -
.Other points are made by the assignment of errors; but they-are of a character not necessary to be particularly noticed; it is sufficient to remark that we are til’ opinion they cannot be sustained.
The decree must be affirmed with costS;